**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**In Re:**

**Louis A. Gencarelli, Sr.,**

**Louis A. Gencarelli, Sr.,**

**Appellant**

**vs.**

**UPS Capital Business Credit,**

**Appellee**

**C.A. No.: 05-00257-T**
**Bk. No. 04-10630**
**Bk. No. 04-10682**

**LOUIS A. GENCARELLI, SR.'S OBJECTION TO UPS CAPITAL BUSINESS CREDIT'S MOTION TO DISMISS APPEAL**

NOW COMES appellant Louis A. Gencarelli, Sr. ("Gencarelli"), by and through counsel, and hereby objects to appellee UPS Capital Business Credit's ("UPS") motion to dismiss the instant appeal.

In support of the within objection, Gencarelli submits the accompanying memorandum.

Respectfully submitted,

LOUIS A. GENCARELLI, SR.

By his Attorneys,

Joseph P. Ferrucci (#4231)
Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel.: (401) 455-1000
Fax.: (401) 455-7778

Dated: July 15, 2005

**Certification**

I hereby certify that on this 15th day of July, 2005, I served a true and accurate copy of the foregoing upon **Edward L. Pontacaloni, Esq. & Barbara A. Frederick, Esq.**, Updike, Kelly & Spellacy, P.C., One State Street, P.O. Box 231277, Hartford, Connecticut, 06123-1277; and **James R. Simmons, Esq.**, Nadeau & Simmons, 56 Pine Street, Providence, Rhode Island, 02903, by first-class, postage prepaid mail.

FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RECEIVED
JUL 15 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

**In Re:**

**Louis A. Gencarelli, Sr.,**

**Louis A. Gencarelli, Sr.,**

**Appellant**

**vs.**

**UPS Capital Business Credit,**

**Appellee**

**C.A. No.: 05-00257-T**
**Bk. No. 04-10630**
**Bk. No. 04-10682**

**LOUIS A. GENCARELLI, SR.'S MEMORANDUM IN SUPPORT OF HIS OBJECTION TO UPS CAPITAL BUSINESS CREDIT'S MOTION TO DISMISS APPEAL**

**Introduction**

NOW COMES appellant Louis A. Gencarelli, Sr. ("Gencarelli"), by and through counsel, and hereby submits the within memorandum in support of his accompanying objection to appellee UPS Capital Business Credits's ("UPS") motion to dismiss the instant appeal.

UPS has advanced two (2) principle arguments in support of its motion to dismiss: 1) the Bankruptcy Court lacked the requisite authority to convert or transform Gencarelli's objection to UPS' motion to enlarge time to file a notice of appeal to a so-called "motion for relief", and, further, to conduct a hearing thereon, which resulted in a tolling of the appeals period relative to the Bankrutpcy Court's February 11th action; and 2) that a separate order or other document was

not required relative to the Bankruptcy Court's April 27th decision, and, as such, the time for taking any appeal therefrom expired ten (10) days thereafter.

Gencarelli respectfully submits that UPS' position is not supported by the tortured and narrow reading of the applicable procedural rules that UPS espouses or by the subject case law. Accordingly, UPS' motion to dismiss the instant appeal must be denied.

**Pertinent Facts and Procedural History**

On February 14, 2002, Gencarelli and debtor Bess Eaton Donut Flour Company, Inc. ("Bess Eaton"), entered into two (2) loan transactions with UPS, the first for $5,061,133.00 (the "$5 Million Note"), and the second for $1,969,128.00 (the "$2 Million Note") (collectively, the "Notes"). The Notes carried floating interest rates calculated at prime plus one and one quarter percent (1.25%), as well as sliding scale prepayment penalties for the first five (5) years. If the loans were paid off in year one there would be a five percent (5%) penalty; in year two (2), a four percent (4%) penalty; in year three (3), a three percent (3%) penalty, and so on through year five (5).

On March 1, 2004, Bess Eaton filed a voluntary Chapter 11 bankruptcy proceeding, and two (2) days later Gencarelli filed an individual voluntary insolvency proceeding. At the insistence of Tim Horton's, the two (2) bankruptcy cases, *to wit*, Bess Eaton and Gencarelli, were filed in the Bankruptcy Court to facilitate, and consummate a previously negotiated sale of Gencarelli's Bess Eaton donut business to Tim Horton's, its Canadian business rival.

At auction, after spirited competition at the Bankruptcy Court authorized sale, Tim Horton's was the successful bidder for the majority of Bess Eaton assets for $41,600,000.00 - $6,080,000.00 more than the agreed-to pre-petition sale price, resulting in funds sufficient to pay all creditors in full, plus interest. As a direct result of this sale, UPS was paid in excess of $6.8

Million, in principal and interest in connection with the Notes. Ultimately, all that remained unpaid and in dispute, from UPS' perspective, were the so-called prepayment penalties contemplated under the Notes. Because the Notes were paid off in the third year, UPS sought a three percent (3%) prepayment penalty on each - $146,077.00 under the $5 Million Note, and $56,745.00 on the $2 Million Note, or total prepayment penalties in the sum of $202,822.00 – UPS' so-called Claims Nos. 37 and 38.

Gencarelli objected to UPS' so-called Claims Nos. 37 and 38, respectively. Gencarelli's objection to these claims was initially heard by the Bankruptcy Court on October 7, 2004, at which time UPS presented no evidence in support of its claims. At the conclusion of the October 7th hearing, which consisted of the arguments of counsel only, Votolato, J. determined that 11 U.S.C. §506(b) preempted state law with respect to the addition of reasonable fees, costs or charges to an over-secured claim in a bankruptcy proceeding, and, further, "that a single federal standard should apply to their allowance." UPS did not appeal the entry of Votolato, J.'s October 8th decision, never challenged or objected to the same, or otherwise requested that the Bankruptcy Court reconsider its determination regarding the applicability of §506(b) of the Bankruptcy Code. Under the standard established by §506(b), and based upon the absent evidentiary record before the Bankruptcy Court regarding reasonableness, Votolato, J. determined that there was no basis under §506(b) upon which to allow UPS' claim for prepayment penalties.

Notwithstanding, UPS thereafter requested an opportunity to present evidence to the Bankruptcy Court relative to its claims for the so-called prepayment penalties under the Notes. The Bankruptcy Court indulged UPS and granted its request in scheduling the matter for hearing, which came to be called before the Bankruptcy Court on December 15, 2004. At that time, UPS

presented only the testimony of Jeffrey B. Dahms ("Dahms"), who manages UPS' "sold loans portfolio", in support of its claims. When asked as to how the so-called prepayment penalties were calculated or established, Dahms stated, surprisingly, that he "had no knowledge," and, instead, concentrated on the process UPS follows in selling its notes in the secondary market. In fact, Dahms testified that to the extent that UPS sustained any losses as a result of the prepayment of the Notes the same was a function of the terms of its contractual relationship with the purchaser of the Notes on the secondary market, Union Planters ("Union"), a contract to which neither Gencarelli nor Bess Eaton were parties and not the result of Gencarelli's prepayment of the Notes. Even more, when pressed on cross-examination by Gencarelli as to whether UPS can provide proof of any actual or sustained losses or damages stemming from the prepayment of the Notes, Dahms responded with a resounding "no." As such, according to the Bankruptcy Court, Dahms' testimony turned out to be completely irrelevant to the issue for which the matter was "reopened".

Overly cautious so as to not simply deny UPS' claims "out of hand", and having an interest in reaching an appropriate result based upon a rational consideration of the merits of the dispute, rather than on the "default mode" in which UPS left things on December 15th, the Bankruptcy Court, *sua sponte*, gave UPS another chance to present and introduce relevant evidence on the reasonableness of the so-called prepayment penalties under the Notes. This further evidentiary hearing was scheduled for, and came to be called on December 22, 2004.

Over Gencarelli's objection with respect to re-opening the matter for evidence for a "second time," evidence was taken, *de bene*, again, through Dahms, who, as he did previously, testified in generalities and assumptions as to what typically happens with respect to the funds received from prepaid loans. As before, Dahms provided no assistance to the Bankruptcy Court

relative to the standard established in §506(b) relative to the prepayment of the Notes, or evidence of any actual losses or damages sustained by UPS as a result of the same. In fact, Dahms essentially testified that the prepayment of the Notes did not impact or affect its ability to fund other USDA guaranteed loans at or about the time of the prepayment of the Notes. Simply put, once again, he provided nothing to the Bankruptcy Court that would support UPS' position.

In fact, contrary to UPS' position, Dahms admitted that he was clueless as to how prepayment penalties were calculated, the rate(s) at which UPS re-loaned the funds, or how long it took UPS to get said funds back into the marketplace. In addition, Dahms could not articulate whether new borrowers paid origination fees, points, attorneys' fees, or other costs in connection with "re-loaning" of these funds. Upon the conclusion of UPS' presentation, and following counsels' respective arguments, the Bankruptcy Court issued wherein Votolato, J. denied UPS' Claims No. 37 and 38 in full, sustained Gencarelli's objection thereto, struck the purported evidence presented by UPS on December 22nd, and, finally, apologized to Gencarelli for the inconvenience of having to oppose the additional hearings in this matter.

On January 19, 2005, a judgment and order consistent with Votolato, J.'s December 22nd decision was entered by the Bankruptcy Court. Thereafter, on February 1, 2005 UPS filed its Notice of Appeal, and claimed error. Unfortunately for UPS, its Notice of Appeal was untimely filed insofar as it was filed more than ten (10) days after the order and judgment appealed from was entered[1].

---

[1] On January 19, 2005, the Bankruptcy Court entered its judgment and order in favor of Gencarelli, and against UPS, with respect to UPS' asserted Claims 37 and 38, respectively, after three (3) separate, full hearings thereon. Under Rule 8002 of the Bankruptcy Rules of Procedure, a notice of appeal *must* be filed "within ten (10) days from the date of entry of judgment, order, or decree appealed from." In the instant case, the ten (10) day appeal period began on January 20th, and concluded on January 31st. However, notwithstanding the rule-mandated appeals period, UPS failed to timely file its notice of appeal, and, instead, filed the same on February 1, 2005 - one day after the ten (10) appeals period had expired. Accordingly, UPS' appeal was untimely.

Recognizing, without prompting, that it had filed its notice of appeal out of time, on February 3, 2005, UPS moved the Bankruptcy Court, pursuant to Rule 8002(c)(2) of the Bankruptcy Rules of Procedure, to extend or enlarge the time for filing its notice of appeal. This motion for extension was served upon Gencarelli on or about that same date. Gencarelli had ten (10) days from the date of service within which to advance any opposition to a motion or petition requesting relief, which meant that Gencarelli had up to, and including, February 13th within which to object or otherwise respond to UPS' motion for extension of time.[2]

On February 11, 2005, less than ten (10) days after the filing and certification of UPS' motion for extension of time, Gencarelli filed his objection thereto in the Bankruptcy Court. On that same date, inadvertently, the Bankruptcy Court, prior to the entry of Gencarelli's objection on the Bankruptcy Court's docket, granted UPS' motion.

Prior to Gencarelli having to move the Bankruptcy Court to vacate its order, the Bankruptcy Court realized its "inadvertence" in granting UPS' motion for extension prior to the expiration of the objection period, converted Gencarelli's objection to a motion for relief from the court's February 11th action, and quickly scheduled UPS' motion for extension of time for filing notice of appeal for a contested, evidentiary hearing.[3] The Bankruptcy Court took this *sua sponte* action within five (5) days of the court's February 11th action. Although the hearing on this matter was previously scheduled, the same had been continued several times, principally at UPS' request, and was ultimately scheduled to be called before the Bankruptcy Court on April 27, 2005.

---

[2] Indeed, UPS' own motion to extend time for filing its notice of appeal acknowledged that Gencarelli had ten (10) days within which to object to its motion.

[3] The Bankruptcy Court took this action on its own initiative, and without prompting from either party. Moreover, the Bankruptcy Court has indicated that the hearing was captioned as a so-called "motion for reconsideration" solely
*(Footnote continued on next page)*

On April 27th, after hearing, the Bankruptcy Court made two (2) primary findings: (1) because the instant appeal had been docketed in this Court the Bankruptcy Court lacked the requisite jurisdiction to pass upon UPS' motion for an extension at this juncture; and (2) in the alternative, assuming the Bankruptcy Court has jurisdiction to determine UPS' request, the motion for extension of time to file the notice of appeal is granted. On June 1st, the Bankruptcy Court entered an order reflecting its April 27th decision.

Subsequently, on June 9, 2005, Gencarelli timely appealed to this Court the entry of the Bankruptcy Court's June 1st order relative to the April 27th hearing.

**Argument**

To be sure, UPS correctly sets forth the general proposition governing appeals from the Bankruptcy Court to the District Court: "An appeal from a judgment, order or decree of a bankruptcy judge to a district court . . . as permitted by 28 U.S.C. § 158(a)(1) . . . shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 2002." Fed. R. Bankr. P. 8001(a). "The timely filing of a notice of appeal is mandatory and jurisdictional." *Balzotti v. RAD Invs., LLC (In re Shepherds Hill Dev. Co.)*, 316 B.R. 406, 414 (Bankr. 1st Cir. 2004). A notice of appeal must "be filed with the clerk within ten (10) days of the date of entry of the judgment, order or decree appealed from." *See* Fed. R. 8002(b) & (c).

In the instant action, it is beyond dispute that this is exactly what Gencarelli has done – timely appealed the Bankruptcy Court's June 1st order. *See* Exhibit F appended to UPS' memorandum in support of its motion to dismiss appeal. Despite UPS' bald assertions to the

*(Footnote continued from previous page)*
as a function of its docket entry system, and that the hearing was designated to determine UPS' pending motion for extension of time to file notice of appeal.

contrary, neither the applicable procedural rules nor the applicable case law support the positions now advanced by UPS in its papers.

UPS readily acknowledges that certain motions operate to stay the running of an appeal period under Bankruptcy Rule 8002(b). *See* UPS' memorandum in support of its motion to dismiss appeal, at p. 8. In fact, UPS correctly represents that a "motion to reconsider" is one such motion that tolls the running of the applicable appeals period. *See* UPS' memorandum in support of its motion to dismiss appeal, at pp. 8-9. However, a motion to reconsider is not the only such motion for relief from judgment or order that tolls the running of an appeals period. *See*, for example, Rule 59 of the Federal Rules of Civil Procedure.

The Bankruptcy Court docket in this matter evidences that "no party, including Gencarelli, filed a motion for reconsideration." *See* UPS' memorandum in support of its motion to dismiss appeal, at p. 9. Instead, it was the Bankruptcy Court, *sua sponte,* that converted Gencarelli's objection to UPS' motion to enlarge time to file its notice of appeal with respect to the January 19th judgment and order, and, further, to schedule a substitive hearing upon said motion notwithstanding the Bankruptcy Court's purported February 11th grant of said motion. In other words, the Bankruptcy Court, on its own initiative, sought and/or permitted itself and the parties an opportunity to argue UPS' motion to enlarge and to consider its February 11th action, as well as whether to alter or amend the same in light of the attendant facts. *See* Exhibit D appended to UPS' memorandum in support of its motion to dismiss appeal. This action tolled the running of the applicable appeals period. *See* Burnam, *infra*.

UPS incorrectly argues that the Bankruptcy Court had no authority to "transform" or convert, *sua sponte*, Gencarelli's objection to UPS' motion to enlarge time within which to file notice of appeal into a "cognizable objection or motion to reconsider". *See* UPS' memorandum

in support of its motion to dismiss appeal, at p. 10. However, UPS abjectly fails to cite any procedural rule and/or case law that would support any such naked statement.

In fact, UPS' position is at variance with well-settled, and widely accepted law, that "the bankruptcy court has the inherent equitable power to correct its own mistake to present [*sic*] an injustice." *Hershkovitz v. Hershkovitz*, 101 B.R. 816, 819 (Bankr. N.D. Ga. 1989). Indeed, the Bankruptcy Court's exercise of such discretion or power is neither unique nor extraordinary. For example, district courts have long had the discretion to invoke this very power, *sua sponte,* as may be necessary or appropriate. *See Hertz Corp. v. Alamo Rent-a-Car, Inc.*, 16 F.3d 1126, 1132 (11th Cir. 1994); *Burnan v. Amoco Container Co.*, 738 F. 2d 1230, 1232 (11st Cir. 1984); *Sargent v. Columbia Forest Products, Inc.*, 1994 WL 902817, *2 (D.Vt. Spet. 7, 1994), aff'd. mem., 52 F.3d 311 (3d Cir.), *cert. denied*, 111 S.Ct. 256 (1995); *Thomas v. Board of Examiners, Chicago Public Schools*, 1986 U.S. Dist. LEXIS 26055, 1986 WL 5662, *1 (N.D. Ill. April 30, 1986); *see also, Sun-Tek Industries, Inc. v. Kennedy Sky Lites, Inc.*, 929 F.2d 676, 678 (Fed. Cir. 1991); *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986).

The scenario in the instant case closely resembles, and is analogous to, that which was presented in *Burnam v. Amoco Container Co.*, 738 F.2d 1230 (11th Cir. 1984). In *Burnam*, the court specifically determined that "the court has the power on its own motion to consider altering or amending a judgment" so long as the court acts within ten (10) days after entry of judgment. *Burnam*, 738 F.2d, at 1232. A court make take such an action *sua sponte,* for example, pursuant to Rule 59 of the Federal Rules of Civil Procedure. In fact, as with motions for reconsideration brought under Rule 60, Rule 59 motions likewise toll the time for filing a notice of appeal. *Burnam*, 738 F.2d, at 1232.

It is clear that Rule 59 does not simply relate solely to new trials. Although Gencarelli does concede that "most" of Rule 59 does, in fact, relate to new trials, the last paragraph expressly permits a court to "alter or amend a judgment." *Bryant v. The New Jersey Department of Transportation*, 998 F.Supp. 438, 442 (D. N.J. 1998). *See* Fed. R. Civ. P. 59(e). The term "judgment" as used in the Federal Rules of Civil Procedure includes "a decree and any order from which an appeal lies." *Id. See also*, Fed. R. Civ. P. 54(a) (defining "Judgment"). As such, in the instant case, the Bankruptcy Court plainly had the discretion and authority to *sua sponte* convert Gencarelli's objection, and, in doing so, insofar as the same was done timely, *to wit,* within five (5) days of the entry of the Bankruptcy Court's February 11th action as reflected on the docket, the appeals period was tolled until such time as the Bankruptcy Court called the matter for hearing on April 27th, and thereafter entered its order regarding the same on June 1st. Accordingly, Gencarelli's June 9th Notice of Appeal is indeed timely.

As an aside, it is interesting to note that UPS only now discounts the Bankruptcy Court's *sua sponte* discretion and authority when it is convenient for its position and purpose. At no time did UPS complain when the Bankruptcy Court, *sua sponte,* ordered that UPS could conduct a "second, full evidentiary hearing", and third overall hearing, upon Claims Nos. 37 & 38, respectively, on December 22, 2004. That hearing was initiated at the Bankruptcy Court's behest, and not that of either party. The fact the UPS participated in such a proceeding, without objection, is a clear recognition on its part of the Bankruptcy Court's authority and discretion to, on its own initiative, afford parties an opportunity for relief from an order or judgment when it perceives that justice may require the same.

In addition, UPS argues that in accordance with Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure a separate document

disposing of the Bankruptcy Court's *sua sponte* hearing upon a motion for relief from judgment or order and underlying motion to enlarge time within which to file notice of appeal is required. In support of its position UPS points to the Section (D) of Rule 53 of the Local Rules of the District Court for the District of Rhode Island, which provides, in pertinent part: "...orders and judgments of bankruptcy judges shall be effective upon entry by the clerk of the bankruptcy court unless stayed by the bankruptcy judge or a district judge." Local R. Civ. P. 53(D)(2).

Notwithstanding that on April 27th the Bankruptcy Court conducted a hearing upon the so-called motion for relief and underlying motion to enlarge time to file notice of appeal, rendered a decision thereon, on April 28th the Bankruptcy Court clerk entered on the court's docket that the matter came to be called for hearing before the Court on April 27th, and that, per order of Votolato J., UPS was required to submit to the Bankruptcy Court a separate document or order reflecting the court's April 27th decision. In other words, the Bankruptcy Court itself specifically ordered that a separate document be submitted for entry by the court in order that the April 27th decision may be given effect and formalized. Even more, the Bankruptcy Court ordered that this separate writing be filed by UPS no later than May 9, 2005.

There is no dispute that, on or before May 9th, UPS filed its proposed form of order, to which Gencarelli filed an objection. Gencarelli subsequently filed his own proposed form of order, to which UPS objected. The Bankruptcy Court requested the parties to provide memoranda in support of their respective proposed forms of order, and only thereafter, upon considering the papers and pleadings, as well as the events that transpired before the Bankruptcy Court on April 27th, did Votolato, J. enter his own form of order disposing of the so-called motion for relief and motion to enlarge time to file notice of appeal on June 1st. Subsequently, Gencarelli timely appealed from the same. As such, UPS' argument that no separate document

or writing was necessary to give effect to the Bankruptcy Court's April 27th decision falls "flat" insofar as it is completely at odds with the express direction and order of the Bankruptcy Court itself on April 27th that a separate writing or document be produced to memorialize and give effect to the Bankruptcy Court's April 27th decision.

Moreover, UPS clearly understands that a separate document or order was required to effectuate the Bankruptcy Court's April 27th decision because it prepared and filed with the court just such a document. If UPS truly believed that a separate order was not necessary, it would not have submitted one.

Further, the policy behind the requirement of a separate document or order is to guard against and/or ensure that circumstances such as the present one do not occur. Separate documents or orders are necessary to avoid uncertainties as to the date on which orders or judgments are entered. *U.S. v. Indrelunas*, 411 U.S. 216, 222 (1973). In addition, case law in this jurisdiction suggests that, when appropriate, Rule 58's technical requirements should be relaxed to assist an appeal, not to foreclose one. *Fiore v. Washington County Community Mental Health Center*, 960 F.2d 229, 236 n.11 (D. R.I. 1992). Thus, to the extent that any dispute exists relative to the requirement of a separate document or order, the same must be resolved in favor of Gencarelli in accordance with well-settled policy and case law.

## Conclusion

WHEREFORE, for the foregoing reasons, Gencarelli respectfully prays that this Court deny UPS' motion to dismiss appeal, that this Court award to Gencarelli any and all reasonable attorneys' fees, costs and/or other expenses incurred in the defense of UPS' motion to dismiss appeal, and that this Court award to Gencarelli such other further relief as this Court deem fair, just and meet.

Respectfully submitted,

LOUIS A. GENCARELLI, SR.

By his Attorneys,

Joseph P. Ferrucci (#4231)
Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel.: (401) 455-1000
Fax.: (401) 455-7778

Dated: July 15, 2005

**Certification**

I hereby certify that on this 15th day of July, 2005, I served a true and accurate copy of the foregoing upon **Edward L. Pontacoloni, Esq. & Barbara A. Frederick, Esq.**, Updike, Kelly & Spellacy, P.C., One State Street, P.O. Box 231277, Hartford, Connecticut, 06123-1277; and **James R. Simmons, Esq.**, Nadeau & Simmons, 56 Pine Street, Providence, Rhode Island, 02903, by first-class, postage prepaid mail.

Darlene Morris